| | |
|---|---|
| BEVERLY PLATT, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> JOHN J. SHERMAN, WARREN H. GFELLER, ARTHUR B. KRAUSE, RICHARD T. O'BRIEN, INERGY HOLDINGS L.P., INERGY HOLDINGS GP, LLC, NRGP LIMITED PARTNER, LLC, NRGP MS, LLC, AND INERGY, L.P., <br><br> Defendants. | **CIVIL ACTION NO.   4:10-cv-991** <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW** <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, by his attorneys, alleges the following upon information and belief, except for those allegations that pertain to plaintiff and his attorneys, which allegations are based on personal knowledge. Plaintiff's information and belief is based on, *inter alia*, the investigation conducted by his attorneys, including a review of the public filings of defendant Inergy Holdings L.P. ("Holdings" or the "Company"), press releases, news articles and publicly available information concerning Holdings.

## SUMMARY OF THE ACTION

1.      This action arises out of the unlawful actions of the Director Defendants (as defined below), in conspiracy with or aided and abetted by the third parties, in connection with a proposed transaction whereby the Company, Inergy Holdings GP, LLC ("Holdings GP"), NRGP Limited Partner, LLC ("New NRGP LP"), NRGP MS, LLC ("MergerCo") and

Inergy, L.P. (the "Partnership") entered into an Agreement and Plan of Merger (the "Merger Agreement"), dated as of August 7, 2010, whereby Holdings will be sold to the Partnership.

2.     Under the proposed agreement, Holdings common unitholders (the "Holdings Common Units") will receive 0.77 Partnership limited partnership units (the "LP Units") in exchange for each Holdings LP Unit owned at closing, an approximate value of $33 per Holdings Common Unit. Upon closing of the merger, the former owners of Holdings will own approximately 43.8% of the combined entity.

3.     Specifically, pursuant to the terms of the Merger Agreement, among other things (a) Holdings will (i) distribute to the holders of Holdings Common Units the common units representing the LP Units that Holdings owns (the "Holdings LP Units"), such distribution to be included as a component of the merger consideration; (ii) exchange with the Partnership the incentive distribution rights in the Partnership (the "IDRs") owned by Holdings; and (iii) contribute to the Partnership all of Holdings' ownership interests in IPCH Acquisition Corp. ("IPCH"), a wholly owned subsidiary of Holdings, and Inergy Partners, LLC ("Inergy Partners"), a direct and indirect wholly owned subsidiary of Holdings.

4.     The Partnership, as consideration for the contribution and exchange (the "GP Exchange"), will (i) deposit or cause to be deposited with an exchange agent for the benefit of holders of Holdings Common Units 35,031,991 LP Units (together with the Holdings LP Units, the "New LP Units") and 11,568,560 Class B Units in the Partnership having such rights, preferences and limitations as are set forth in the Partnership's Third Amended and Restated Agreement of Limited Partnership (the "Amended and Restated Partnership Agreement"), (ii) provide cash to be paid in lieu of any fractional New LP Unit or Class B Unit, as applicable, issuable upon exchange as described below, and (iii) assume Holdings' liabilities pursuant to Holdings' Credit Agreements.

2

5.     Upon the GP Exchange, the IDRs will be cancelled and have no further force or effect and the 789,202 LP Units owned by IPCH and the 2,837,034 LP Units and 0.71% general partner interest in the Partnership owned by Inergy Partners will be converted into Class A Units in the Partnership of equivalent value and having such rights, preferences and limitations as are set forth in the Amended and Restated Partnership Agreement.

6.     MergerCo will merge with and into Holdings, the separate existence of MergerCo will cease and Holdings will survive and continue to exist as a Delaware limited partnership (the "Merger"), such that immediately following the Merger, Holdings GP will continue to be the sole general partner of Holdings and New NRGP LP will be admitted to, and become the sole limited partner of, Holdings; and by virtue of the Merger, each Holdings Common Unit that is issued and outstanding will be converted into the right to receive 0.770 LP Units; except that with respect to the 11,568,560 LP Units to which the certain members of senior management (the "PIK Recipients") of the Partnership otherwise would be entitled to receive pursuant to the Merger, the PIK Recipients will instead receive their respective shares of Class B Units in the amounts described below.

7.     The terms of the Merger Agreement were approved by a committee (the "Partnership Committee") appointed by the board of directors of Partnership GP, and by a committee (the "Holdings Committee") appointed by the board of directors of Holdings GP.

8.     The deal includes the issuance of $2 billion in Partnership common units (the "Merger" or "Proposed Transaction").

9.     Additionally, the Partnership and certain unitholders of Holdings: John J. Sherman, Phillip L. Elbert, R. Brooks Sherman, Jr, Andrew L. Atterbury, William C. Gautreaux, and Carl A. Hughes comprising a majority of the issued and outstanding Holdings Common Units (collectively, the "Holdings Supporting Unitholders") have executed a Support Agreement (the "Support Agreement") pursuant to which the Holdings Supporting

3

Unitholders have agreed to, among other things, vote in favor of the approval and adoption of the Merger Agreement.

10.     In support of the Merger, certain members of Holdings' senior management have agreed to take a portion of their consideration in the form of paid-in-kind equity securities ("PIK Units") in lieu of common units.  The PIK Units total approximately 11.6 million units, or approximately 24% of the total 47.7 million units issued in the Proposed Transaction.  The PIK Units are non-transferable and not entitled to a cash distribution until converted to common units of the Partnership.  Each quarter, each holder of a PIK Unit will receive an additional number of PIK Units in lieu of cash distributions.  The PIK Units automatically convert to Partnership common units on a one-for-one basis as follows: 50% immediately following the payment of the first quarterly distribution after the first anniversary of the closing of the merger, and the remaining 50% immediately following the payment of the first quarterly distribution after the second anniversary of the closing of the merger.

11.     The Merger Agreement also provides that upon the closing of the Merger, the director of Holdings GP that does not currently serve on the Partnership board of directors will be invited to join the board of Partnership GP.

12.     The Proposed Transaction is at a grossly inadequate and unfair price and was arrived at by an unfair and tainted process that was intended to provide valuable assets of Holdings to defendants for unfair and inadequate consideration. Defendants have acted together, in concert, or in conspiracy to the detriment of the Company and in breach of the Holdings GP and Director Defendants' fiduciary duties to Holdings.

13.     Plaintiff seeks to enjoin consummation of the Merger and completion of the Proposed Transaction under the grossly inadequate and unfair implied price of $33.00 per share.  Alternatively, in the event that the Merger is consummated, plaintiff seeks to recover

4

damages caused by the breach of fiduciary duties owed by Holdings GP and Director Defendants. The Merger and the acts of the Director Defendants and Holdings GP , as more particularly alleged herein, constitute a breach of defendants' fiduciary duties to Holdings and a violation of applicable legal standards governing the defendants herein.

14. Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company. Specifically, defendants agreed to: (i) a "go-shop" provision permitting a limited period of 60 days for the Company to actively solicit potential bidders; (ii) a no-solicitation provision that prevents other buyers from having access to the Company's confidential information following the go-shop period, which information is necessary to formulate a bid, except under extremely limited circumstances; (iii) a matching rights provision that allows Holdings two (2) days to match any competing proposal in the event one is made; and (iv) a provision that requires the Company to pay the Partnership a termination fee of $20 million. These provisions substantially limit the Board of Director's ability to act with respect to investigating and pursing superior proposals and alternatives including a sale of all or part of Holdings. The Director Defendants further breached their fiduciary duties by failing to obtain a collar to combat any fluctuation in the price of Holdings and the Partnership LP Units that would negatively affect Holdings' unitholders. Moreover, if Holdings unitholders do not approve the Proposed Transaction and choose to walk away from the deal because the Partnership LP Units value declines, it will result in a termination fee of $20 million payable by Holdings.

15. Finally, on October 4, 2010, Holdings filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction pursuant to which, *inter alia,* the Director Defendants recommended that Holdings stockholders vote "FOR" the approval and adoption

5

of the Merger Agreement and in favor of the Proposed Transaction at a scheduled unitholder vote on November 2, 2010. In connection with the Proxy, Defendants have breached their duty of candor by failing to disclose material information to Proxy unitholders necessary for them to determine whether to vote in favor of the Proposed Transaction.

16. The Director Defendants and Holdings GP's' action in proceeding with the Proposed Transaction is wrongful, unfair, and harmful to Holdings' public unitholders, and will deny them their right to share proportionately in the true value of Holdings' future growth in profits and earnings.

17. The Director Defendants and Holdings GP have breached their fiduciary duties to Holdings unitholders by causing the Company to enter into the Merger Agreement that provides for the sale of Holdings at an unfair price, and deprives Holdings' public unitholders of maximum value to which they are entitled.

18. Plaintiff and the class have suffered and will suffer irreparable injury unless defendants are enjoined from breaching their fiduciary duties and from carrying out the aforesaid plan and scheme. Plaintiff seeks to enjoin defendants from approving the Merger or, in the event the Merger is consummated, recover damages resulting from defendants' violations of their fiduciary duties of loyalty, good faith, and due care.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over the subject matter of this action pursuant to section 27 of the Exchange Act, 15 U.S.C. §78aa (2008), and 28 U.S.C. §§1331 and 1337 (2008). This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

12. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2) (2008) because Holdings and Holdings GP are headquartered in this District and a substantial portion of the transaction and occurrences complained of herein, including the Defendants'

6

primary participation in the wrongful acts detailed herein, occurred in this District. In addition, one or more of the defendants either resides in or maintains executive offices in this District.

**THE PARTIES**

19.     Plaintiff has been the owner of units of Holdings since prior to the transaction herein complained of and continuously to date.

20.     Defendant Holdings, a Delaware limited partnership, with its principal offices located at Two Brush Creek Boulevard, Suite 200, Kansas City, Missouri 64112, primarily operates, owns and operates a retail and wholesale propane supply, marketing and distribution business. Holdings also owns and operates a midstream business that includes three natural gas storage facilities (Stagecoach, Steuben and Thomas Corners), a liquefied petroleum gas (LPG) storage facility (Bath), a natural gas liquids (NGL) business and a solution-mining and salt production company (US Salt). For the fiscal year ended September 30, 2009 (fiscal 2009), Holdings sold and physically delivered 310 million gallons of propane to retail customers and 380.6 million gallons of propane to wholesale customers. Its propane business includes the retail marketing, sale and distribution of propane, including the sale and lease of propane supplies and equipment, to residential, commercial, industrial and agricultural customers. Holdings markets its propane products under various regional brand names. Holdings was founded in 2001.

21.     Defendant John J. Sherman ("Sherman") has served as President, Chief Executive Officer, Director of Holdings GP since April 2005 and has also served as President, Chief Executive Officer and a director of Partnership GP since March 2001, and of Inergy's predecessor from 1997 until July 2001. He also serves as a director of Great Plains Energy, Inc. Defendant Sherman is the beneficial owner of approximately 39.15% or

7

7,938,879 Holdings units. Also, defendant Sherman is the beneficial owner of approximately 57.03% of Holdings GP.

22.     Defendant Warren H. Gfeller ("Gfeller") has served as Director of Holdings GP since March 2001.

23.     Defendant Arthur B. Krause ("Krause") has served as a director of Holdings GP since April 2005 and has been a member of Partnership GP's board of directors since May 2003. Defendant Krause also serves as a director of Westar Energy.

24.     Defendant Richard T. O'Brien ("O'Brien") is director of Holdings GP since May 2006. Defendant O'Brien currently serves as the President and Chief Executive Officer and a Director of Newmont Mining Corporation. From April 2001 until September 2005, O'Brien served as the Executive Vice President and Chief Financial Officer of AGL Resources. He also serves as a director of Vulcan Materials Company.

25.     The individual defendants named in paragraphs 21-24 above are all collectively referred to herein as the "Director Defendants."

26.     Defendant Holdings GP is a Delaware limited liability company and the general partner of Holdings.

27.     Defendant New NRGP LP is a Delaware limited liability company and a wholly-owned subsidiary of Holdings GP created for purpose of completing the Proposed Transaction.

28.     Defendant MergerCo is a Delaware limited liability company and a wholly-owned subsidiary of Holdings GP created for purpose of completing the Proposed Transaction.

29.     Defendants in paragraphs 26-28 are collectively referred to as "Holdings GP."

30.     Defendant the Partnership, a Delaware limited partnership, with its principal offices located at Two Brush Creek Boulevard, Suite 200, Kansas City, Missouri 64112,

8

operates as an energy infrastructure and distribution company. The Partnership's operations include retail marketing, sale, and distribution of propane to residential, commercial, industrial, and agricultural customers. It serves approximately 800,000 retail customers from approximately 300 customer service centers throughout the United States. The Partnership also operates a 40 Bcf natural gas storage business; a liquid petroleum gas storage business; a solution-mining and salt production company; and a propane supply logistics, transportation, and wholesale marketing business that serves independent dealers and multi-state marketers in the United States and Canada. The Partnership was founded in 1996.

31.     Defendant Partnership GP, a Delaware limited liability company and the managing general partner of Partnership.

32.     Defendants in paragraphs 30-31 are collectively referred to as the "Partnership."

33.     Defendants Holdings, Holdings GP, the Director Defendants and the Partnership are collectively referred to herein as "Defendants."

34.     The Director Defendants and Holdings GP owe fiduciary duties, including the highest obligations of good faith, loyalty, fair dealing, due care, and full candor to Holdings and its unitholders.

35.     The Director Defendants and Holdings GP, by reason of their corporate directorships and/or executive positions, are fiduciaries to and for the Company's unitholders, which fiduciary relationship requires them to exercise their best judgment, and to act in a prudent manner and in the best interests of the Company's unitholders.

36.     Each Director Defendant herein is sued individually as a conspirator and aider and abettor, as well as in his or her capacity as an officer and/or director of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

9

## CLASS ACTION ALLEGATIONS

37.     Plaintiff, a Holdings unitholder, brings this action on his own behalf and as a class action, pursuant to the rules of this court, on behalf of himself and all security holders of the Company (except the defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the defendant(s) or their successors in interest) who are or will be deprived of the opportunity to maximize the value of the Holdings Units as a result of the breaches of fiduciary duty and other misconduct arising from defendants' actions.

38.     This action is properly maintainable as a class action.

39.     The class is so numerous that joinder of all members is impracticable. As of July 30, 2010 and at all relevant times herein, Holdings has outstanding about 61,782,532 common units of its units, held by individuals and entities too numerous to bring separate actions. It is reasonable to assume that holders of the Holdings Units are geographically dispersed throughout the Unites States.

40.     There are questions of law and fact which are common to the class including, inter alia, the following:

(i)     whether the Director Defendants and Holdings GP breached their fiduciary and other common law duties of undivided loyalty, independence or due care they owed to the Plaintiff and other members of the class by agreeing to the Merger;

(ii)    whether the Director Defendants and Holdings GP are engaging in self-dealing in connection with the Proposed Transaction;

(iii)   whether the Director Defendants and Holdings GP are unjustly enriching themselves and other insiders or affiliates of Holdings; and

(iv)    whether the class is entitled to injunctive relief or damages as a result of defendants' wrongful conduct.

41.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. The claims of plaintiff are typical of the

10

claims of the other members of the class and plaintiff has the same interests as the other members of the class. Plaintiff will fairly and adequately represent the class.

42. The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incomparable standards of conduct for defendants, or adjudications with respect to individual members of the class which would as a practical matter, be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

43. Plaintiff and the Class have suffered damages and will continue to suffer additional damages as a result of the acts and conduct of and breaches of fiduciary duties by the Director Defendants and Holdings GP alleged herein, including but not limited to the lost opportunity to assess or accept alternatives to the Merger.

44. The Director Defendants and Holdings GP have acted in a manner which affects plaintiff and all members of the class, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Background**

**Ownership Structure**

45. The following diagrams depict the Partnership and Holdings' ownership structure before giving effect to the merger and based on Partnership's ownership as of October 1, 2010.

11



Ownership Structure - Prior to the Merger

(1) Includes 508,033 Holdings common units held by management and directors (other than Holdings Supporting Unitholders).

46. Approximately 62% of the Company's outstanding equity, which includes Common Units and management units ("Management Units") are owned by BGH GP and approximately 38% by the public. BGH GP is owned by affiliates of ArcLight and Kelso and certain investment funds along with certain members of senior management of Holdings. Holdings GP is the Company's general partner and is wholly owned by BGH GP.

**The Merger**

36.     On June 11, 2010, Holdings and Partnership announced the execution of the Merger Agreement. That release provided in relevant part:

> Kansas City, MO (August 9, 2010) – Inergy, L.P. (NYSE:NRGY) and Inergy Holdings, L.P. (NYSE:NRGP) today announced a definitive agreement that, upon completion, will result in the merger of the two partnerships. The merger transaction will be completed with equity consideration and will result in the elimination of NRGY's incentive distribution rights owned by NRGP and NRGY owning its non-managing general partner's economic interest. NRGY expects its current cash distribution rate of $0.705 per common units ($2.82 annualized) to be unchanged as a result of the merger. The transaction will result in a single, streamlined entity with NRGY's enterprise value exceeding $6 billion based on current market values.

> Under the terms of the merger agreement, NRGP unitholders will receive 0.77 NRGY common units in exchange for each NRGP common unit they own at closing, representing a premium to NRGP unitholders of approximately 10% based upon the 20-trading day average closing prices of both securities ending August 3, 2010. The transaction will result in approximately 47.7 million additional units being issued by NRGY. Upon closing of the merger, the former owners of NRGP will own approximately 43.8% of the combined entity.

> "We are pleased to announce the combination of the two partnerships into a single, streamlined entity," said John Sherman, President and CEO of Inergy. "We expect that this transaction will increase our competitiveness, lower our cost of capital, improve the long-term growth profile of the company, and open up value creation opportunities that may not be available to us today."

> The merger is expected to provide benefits to the current owners of both NRGY and NRGP by:

> - Decreasing NRGY's cost of capital, through the elimination of the incentive distribution rights, which will improve its competitive position when pursuing growth opportunities and its ability to accelerate growth in distributable cash flow;

> - Attracting a broader investor base to a single, larger entity with increased public float and greater liquidity;

13

- Preserving NRGY's balance sheet flexibility and attractive liquidity position through an equity exchange transaction; and

- Increasing investor transparency by simplifying the ownership structure and governance.

In support of the merger, certain members of the companies' senior management have agreed to take a portion of their consideration in the form of paid-in-kind equity securities ("PIK Units") in lieu of common units. The PIK Units total approximately 11.6 million units, or approximately 24% of the total 47.7 million units issued in the transaction. The PIK Units have been structured in a manner so that the PIK Unit recipients receive less value than the non-affiliated public unitholders of NRGP due to the PIK Units being non-transferable, not entitled to a cash distribution until converted to common units of NRGY, and based upon PIK terms that favor NRGY unitholders. Each quarter, each holder of a PIK Unit will receive an additional number of PIK Units in lieu of cash distributions. The PIK Units automatically convert to NRGY common units on a one-for-one basis as follows: 50% immediately following the payment of the first quarterly distribution after the first anniversary of the closing of the merger, and the remaining 50% immediately following the payment of the first quarterly distribution after the second anniversary of the closing of the merger.

Management expects the transaction will be immediately neutral to NRGY's annualized distribution of $2.82 per unit and expects long-term accretion due to the benefits of the merger, including the cancellation of incentive distributions currently being paid to NRGP.

The terms of the merger agreement were approved by an independent committee, appointed by the board of directors of NRGY's managing general partner and by an independent committee, appointed by the board of directors of NRGP's general partner. Subsequent to receiving recommendations of the independent committees, the boards of directors of both the managing general partner of NRGY and the general partner of NRGP unanimously approved the transaction.

In addition to customary closing conditions, the merger is subject to approval by a majority vote of the outstanding limited partnership units of NRGP, which is expected to be held in the fourth quarter of 2010. Certain members of management that control over 50% of

14

NRGP's limited partnership units have committed to vote in favor of the merger.

Following the merger, the director of NRGP's general partner that does not currently serve on the NRGY board of directors will be invited to join the board of NRGY's general partner.

47.     The terms of the Merger Agreement were unanimously approved by alleged independent committees of both Holdings GP and Partnership GP.

48.     Below is a diagram depicting the ownership structure of the Partnership following the Merger:



49.     Additionally, the Partnership and the Holdings Supporting Unitholders, including defendant Sherman (who owns approximately 39% of Holdings units outstanding and 57.03% of Holdings GP), Phillip L. Elbert, R. Brooks Sherman, Jr, Andrew L. Atterbury, William C. Gautreaux, and Carl A. Hughes comprising a majority of the issued and outstanding Holdings common units, have executed the Support Agreement pursuant to

16

which the Holdings Supporting Unitholders have agreed to, among other things, vote in favor of the approval and adoption of the Merger Agreement.

50.    In support of the Merger, Holdings Supporting Unitholders have agreed to take a portion of their consideration in the form of PIK Units in lieu of common units.  The PIK Units total approximately 11.6 million units, or approximately 24% of the total 47.7 million units issued in the Proposed Transaction.  The PIK Units are non-transferable and not entitled to a cash distribution until converted to common units of Partnership.  Each quarter, each holder of a PIK Unit will receive an additional number of PIK Units in lieu of cash distributions.  The PIK Units automatically convert to Partnership common units on a one-for-one basis as follows: 50% immediately following the payment of the first quarterly distribution after the first anniversary of the closing of the Merger, and the remaining 50% immediately following the payment of the first quarterly distribution after the second anniversary of the closing of the Merger.

51.    The Merger Agreement also provides that upon the closing of the Merger, the director of Holdings GP that does not currently serve on the Partnership board of directors will be invited to join the board of Partnership GP.

52.    Subject to certain restrictions and conditions, either Holdings or the Partnership may terminate the Merger Agreement, if (i) the Merger has not been consummated on or before December 31, 2010, (ii) a regulatory authority has permanently restrained, enjoined or otherwise prohibited the consummation of the Merger or made the Merger illegal, (iii) there has been a material breach of the Support Agreement, (iv) Holdings or the Partnership breaches certain representations, warranties, covenants or other agreements contained in the Merger Agreement or (v) certain changes in U.S. federal income tax law occur. In addition, the Merger Agreement may be terminated by the mutual consent of Holdings and the Partnership.

17

53.     The Merger Agreement is subject to customary closing conditions, including, among other things: (i) approval by the affirmative vote of the holders of a majority of Holdings Common Units; (ii) receipt of applicable regulatory approvals; (iii) the effectiveness of a registration statement on Form S-4 with respect to the issuance by the Partnership of the LP Units in connection with the Merger; (iv) approval for listing the LP Units and Class B Units to be issued in connection with the Merger on the New York Stock Exchange; and (v) the execution of the Amended and Restated Partnership Agreement substantially in the form attached as Annex A to the Merger Agreement.

54.     The Proposed Transaction is valued at approximately $33.00, as of close on August 9, 2010, for each Holdings Unit.

55.     The Proposed Transaction serves no legitimate business purpose of Holdings but rather is an attempt by defendants to enable the Partnership to benefit unfairly from the transaction at the expense of Holdings' public unitholders.  The Proposed Transaction will, for a grossly inadequate consideration, deny plaintiff and the other members of the class their right to share proportionately in the future success of Holdings and its valuable assets, while permitting the Partnership to reap huge benefits from the transaction.

56.     Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company.  Specifically, defendants agreed to: (i) a "go-shop" provision permitting a limited period of 60 days for the Company to actively solicit potential bidders; (ii) a no-solicitation provision that prevents other buyers from having access to the Company's confidential information following the go-shop period, which information is necessary to formulate a bid, except under extremely limited circumstances; (iii) a matching rights provision that allows Holdings 2 days to match any competing proposal in the event one is made; and (iv) a provision that requires the Company

18

to pay the Partnership a termination fee of $20 million. These provisions substantially limit the Board of Director's ability to act with respect to investigating and pursing superior proposals and alternatives including a sale of all or part of Holdings. The Director Defendants further breached their fiduciary duties by failing to obtain a collar to combat any fluctuation in the price of Holdings and the Partnership LP Units that would negatively affect Holdings' unitholders. Moreover, if Holdings unitholders do not approve the Proposed Transaction and choose to walk away from the deal because the Partnership LP Units value declines, it will result in a termination fee of $20 million payable by Holdings.

57. The terms of the Merger Agreement are structured to ensure that the Partnership, and only the Partnership, ultimately acquires Holdings, regardless of whether such terms are designed and/or serve to maximize unitholder value.

58. The Termination Fee and deal protection devices are deterrents to other potential bidders and provide defendants with an unearned windfall at the expense of the Company's public unitholders if a superior bid emerges.

59. The Director Defendants will maintain a significant and sizeable amount of LP Units, approximately 28%, after the closure of the Proposed Transaction. Defendants Gfeller, Krause and Taylor will remain on the board of directors of Partnership GP. Defendants Sherman and Elbert will continue to be on the board of directors of Partnership GP.

60. There remains a conflict of interest by virtue of the law firm of Vinson & Elkins LLP providing opinions to both Partnership and Holdings in the Proposed Transaction.

61. Accordingly, the terms of the Merger Agreement substantially limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives including a sale of all or part of Holdings.

**The Proxy is Materially Misleading and/or Incomplete**

19

62.     On October 1, 2010, Holdings filed the Proxy in connection with the Proposed Transaction and seeking, *inter alia*, the approval of Holdings Unitholders of the Merger Agreement and the transactions contemplated thereby.

63.     The Proxy fails to provide the Holdings' Unitholders with material information and/or provides them with materially misleading information thereby rendering the Unitholders unable to make an informed decision on whether to vote in favor of the Proposed Transaction.

64.     For example, the Proxy completely fails to disclose the underlying methodologies, projections, key inputs and multiples relied upon and observed by Tudor, Pickering, Holt & Co. Securities, Inc. ("TudorPickering"), the Company's financial advisor, so that Unitholders can properly assess the credibility of the various analyses performed by them and relied upon by the Director Defendants in recommending the Proposed Transaction. In particular, Holdings' management provided the financial advisor with financial forecasts and estimates which reflected alternative scenarios regarding the strategic direction, prospects of the Company in the event that the merger were not consummated.

65.     The Proxy fails to disclose the underlying methodologies, projections, key inputs and multiples relied upon and observed by the financial advisor so that Unitholders can properly assess the credibility of the various analyses performed by them.  In particular, the Proxy is deficient and should provide, *inter alia*, the following:

     i.  The basis for the following assumptions in the financial projections provided by Holdings: (a) the assumption of $75 million per year of unidentified acquisition or growth projects, with (1) cash flow based on an 8.0x EBITDA multiple; and (2) no EBITDA growth over time and incremental maintenance capital expenditures equal to 2.5% of EBITDA of the acquired businesses.

    ii.  The basis for the following assumptions in the financial projections provided by Holdings: (a) additional growth capital expenditures were assumed to be financed both with

new debt in an amount equal to 3.75x forward year projected EBITDA bearing interest at an 8.0% interest rate, before an initial purchasers' discount of 2.5%, and with equity issued at a current yield of 6.6%, before an underwriting and marketing discount of 7%; and (b) the pro forma basis Inergy will achieve synergies from the merger enabling it to reduce annual general and administrative expenses by $1 million and to execute an additional $300 million of unidentified acquisitions or growth projects annually throughout the forecasted period at a 9.0x EBITDA multiple.

iii. In the September 20, 2010 updated financial projections, the basis for the reduction of the interest rate from 8.0% to 7.0% in the assumptions for purposes of calculating the additional growth capital expenditures whereby it was assumed to be financed both with new debt in an amount equal to 3.75x forward year projected EBITDA.

iv. In the *Premiums Paid Analysis*, (a) the size or purchase value for each transaction, and (b) respective premium for each transaction.

v. In the *Selected Trading Metrics Analysis,* (a) the Equity value as a multiple of cash flow received from the underlying master limited partnership estimated for 2010 and 2011 for each of the comparable general partners observed for each transaction; and (b) and the Implied GP Equity Value as a Multiple of Cash Flow Received from Combined GP Interest estimated for 2010 and 2011 for each of the comparable general partners observed for each transaction.

*vi.* In the *Selected Transactions Metrics Analysis,* (a) a description of the transaction; and (b) the respective premium.

vii. In the *Relative Discounted Cash Flow Analysis,* (a) the basis for the terminal multiples of 16x to 20x for the combined general partnership interest; (b) 12x to 16x for the Partnership units; (c) discount rates of 14% to 18% for the combined general partnership interest; and (d) 11% to 15% for the Partnership units.

viii. In the *Contribution Analysis,* the basis for using the assumption that cash flow is assumed to be 105% of

21

> distributed cash flow in all cases, reflecting a coverage ratio
> of the Inergy distribution of 1.05x actual cash distributed.

66. By virtue of their positions as directors and senior officers of the Company, the Director Defendants and Holdings GP have access to and knowledge of Holdings' internal financial information which reveals the true financial and operating condition and prospects of the Company, and have shared such information with the Partnership. Defendants are using this information to benefit themselves at the expense and to the detriment of Holdings and the public unitholders.

67. Moreover, the Director Defendants are motivated by their desire to secure personal benefits as a result of the Proposed Transaction. Specifically, as noted, upon completion of the Merger, the board of Directors of the Partnership will include certain of the directors of Holdings GP and Major Holdings Unitholders. In addition, certain directors stand to reap tens, if not hundreds, of millions of dollars of personal benefits at the expense of the Company and its public unitholders if the Merger is consummated, including the right to receive change-in-control benefits (such as the acceleration of their stock options), thus putting their own personal financial interests irreconcilably in conflict with the interests of the Company and its public unitholders.

68. The Director Defendants and Holdings GP actions in proceeding with the Proposed Transaction are wrongful, unfair, and harmful to Holdings' public unitholders, and will deny them their right to share proportionately in the true value of Holdings' valuable assets, profitable business, and future growth in profits and earnings. The Director Defendants and Holdings GP have breached their fiduciary duties to Holdings unitholders and failed to maximize unitholder value by causing the Company to enter into the Merger Agreement that provides for the sale of Holdings at an inadequate price, and deprives Holdings' public unitholders of maximum value to which they are entitled.

22

69. The Director Defendants and Holdings GP's actions in proceeding with the Proposed Transaction are wrongful, unfair, and harmful to Holdings' public unitholders, and will deny them their right to share proportionately in the true value of Holdings' valuable assets, profitable business, and future growth in profits and earnings. The Director Defendants have breached their fiduciary duties to Holdings unitholders and failed to maximize unitholder value by causing the Company to enter into the Merger Agreement that provides for the sale of Holdings at an inadequate price, and deprives Holdings' public unitholders of maximum value to which they are entitled.

70. Plaintiff has no adequate remedy at law.

## FIRST CAUSE OF ACTION

### Class Claim Against the Defendants for Violation of §14(a) of the Securities Exchange Act of 1934

71. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

72. This claim is brought by Plaintiff derivatively against the Defendants for violations of §14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. (2008), and SEC Rule 14a-9 promulgated thereunder.

73. The Defendants named in this claim disseminated the false and misleading Proxy which they knew or should have known was misleading in that it contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

74. The Proxy was prepared and disseminated by Defendants named in this claim. It misrepresented and/or concealed certain material information concerning the nature of the process involved in the Proposed Transaction and the true value of the Company. In so doing, they made untrue statements of material facts and omitted to state material facts

23

necessary to make the statements that were made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

75.     The Defendants named in this claim issued the Proxy, which was materially false and misleading.  The Defendants were aware of and/or had access to the true facts concerning the process involved in selling the Company and the true value of the Company.  However, notwithstanding this knowledge, each of the Defendants purported to and/or approved the dissemination of the false Proxy.

76.     Defendants permitted the Company to be sold in an effort to aggrandize their own financial position and interests at the expense of Holdings unitholders.  By relying on the false and misleading statements in the Proxy, the unitholders who are unaware of untruths, and relied thereon, were directly and proximately harmed by the Defendants' wrongful conduct.  By reason of such misconduct, the Defendants are liable pursuant to §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty Against the Director Defendants and Holdings GP

77.     Plaintiff adopts by reference as if set forth fully herein each of the foregoing allegations.

78.     The Director Defendants and Holdings GP have violated the fiduciary duties of care to the public unitholders of Holdings.

79.     Plaintiff and the Class will suffer irreparable injury as a result of the Director Defendants and Holdings GP's actions.

80.     Unless enjoined by this Court, the Director Defendants and Holdings GP will continue to breach their fiduciary duties owed to plaintiff and the Class, and may consummate the Proposed Transaction to their irreparable harm.

81.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## THIRD CAUSE OF ACTION

### Aiding And Abetting Against Defendants Holdings GP and The Partnership

82.     Plaintiff incorporates by reference as if fully set forth herein each of the foregoing allegations.

83.     Defendant Holdings GP and the Partnership have knowingly aided and abetted the breaches of fiduciary duty committed by the Director Defendants and Holdings GP to the detriment of Holdings' public unitholders.  Indeed, the proposed merger could not take place without the active participation of defendants Holdings GP and the Partnership, who will be unjustly enriched absent relief in this action.

**WHEREFORE**, plaintiff demands judgment against the Defendants jointly and severally as follows:

A.     Certifying this action as a class action and certifying plaintiff as a Class representative;

B.     Enjoining preliminarily and permanently, the proposed Merger under the terms presently proposed;

C.     To the extent, if any, that the transaction or transactions complained of are consummated prior to the entry of this Court's final judgment, rescinding such transaction or transactions or granting rescissory damages;

25

D.      Directing that Defendants account to plaintiff and the other members of the Class for all damages caused to them and account for all profits and any special benefits obtained by defendants as a result of their unlawful conduct;

E.      Awarding the plaintiff the costs and disbursements of this action, including a reasonable allowance for the fees and expenses of plaintiff's attorneys and experts; and

F.      Granting plaintiff and the other members of the Class such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 13, 2010

Respectfully submitted,

**DYSART TAYLOR LAY
COTTER & McMONIGLE P.C.**

By: /s/ Don R. Lolli                                  
Don R. Lolli            MO Bar # 24012
4420 Madison Avenue
Kansas City, MO 64111
Telephone: (816) 931-2700
Email: dlolli@dysarttaylor.com
*Local Counsel for Plaintiffs*

OF COUNSEL:
**BULL & LIFSHITZ, LLP**
Joshua M. Lifshitz
Peter D. Bull
18 East 41st Street
New York, New York 10017
(212) 213-6222
*Counsel for Plaintiff*

26